UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AMERICAN HOME ASSURANCE
COMPANY, a New York corporation,

    Plaintiff,

-vs-                                                    Case No. 5:10-cv-329-Oc-10GRJ

WEAVER AGGREGATE TRANSPORT,
INC., a Florida corporation, BEACON
INDUSTRIAL STAFFING, INC., a Michigan
corporation,

    Defendants.
_____

# O R D E R

Plaintiff American Home Assurance ("American Home") has filed a seven-count Complaint against Defendants Weaver Aggregate Transport, Inc. ("Weaver") and Beacon Industrial Staffing, Inc. ("Beacon") alleging breach of contract, unjust enrichment, and fraudulent inducement claims arising from two workers' compensation and employer liability insurance policies (Doc. 1). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

This case is now before the Court for consideration of Beacon's Motion to Dismiss Pursuant to Federal Rule 12(b)(6) (Doc. 11), to which American Home has filed a response in opposition (Doc. 14). With leave of Court, Beacon has also filed a reply (Doc. 34).

Upon due consideration, for the reasons set forth below, the Court finds that Beacon's Motion to Dismiss is due to be denied.

**Allegations of the Complaint**

American Home is a New York corporation with its principal place of business located in New York City, New York (Doc. 1, ¶ 4).  It is an insurer authorized to provide workers' compensation and employer liability insurance in Florida (Id., ¶ 19).  Weaver is a Florida trucking corporation with its principal place of business located in Sumterville, Florida (Id., ¶ 6).  Beacon is a professional employment organization providing various human resources services, including leasing employees to its clients (Id., ¶ 21 and n. 1).  Beacon is incorporated and has its principal place of business in Michigan (Id., ¶ 8).

Weaver entered into a Client Service Agreement ("CSA") with Beacon on or about January 1, 2003 (Doc. 1, ¶ 16, Ex. E).  Under the CSA, Beacon agreed to provide payroll services to persons working for Weaver, and agreed to "furnish and keep in full force and effect, at all times during the term of this Agreement, Workers' Compensation Insurance covering all [Beacon] employees leased to [Weaver] under the terms of this Agreement." (Id., ¶ 22, Ex. E).  Beacon leased numerous employees to Weaver during the life of the CSA.  American Home is not a party to the CSA and is not mentioned in the agreement.

On or about December 27, 2004, American Home received a request from an insurance broker – the Goff Group, Inc. ("Goff") – to provide a quote for workers' compensation and employee liability insurance for Weaver.  American Home submitted a quote, which Weaver accepted on December 28, 2004.  American Home then issued to

Weaver a "Binder for Workers' Compensation and Employer Liability Insurance" (Doc. 1, ¶ 27, Ex. G).  The notification attached to the Binder expressly states that:

> Binding is subject to the following:  any changes in rates and/or experience modification by any entity having jurisdiction over this policy, final premium will be determined at the end of the policy period after payoffs have been audited and applicable rates and experience modification have been applied; and, receipt of a completed signed Accord application and experience modification worksheet within 48 hours.

Id.

That same day, American Home received Weaver's signed Accord application, and a cover letter expressly instructing American Home to issue the policy for Weaver effective December 28, 2004 (Doc. 1, ¶ 28, Exs. H-I).  The Accord application was signed by Russell Weaver as corporate officer for Weaver, and stated that Weaver had 30 employees (15 trucking employees and 15 clerical employees) all located in Alabama (Id., ¶¶ 29-30).

American Home subsequently received a letter dated February 2, 2005 from Goff instructing American Home to provide endorsements to add Florida coverage onto the policy, effective January 17, 2005 (Doc. 1, ¶ 32, Ex. J).  The letter included an Accord application dated January 17, 2005, again signed by Russell Weaver, and added five (5) clerical and four (4) trucking employees all located in Florida (Id, ¶¶ 33-35).

American Home then issued to Weaver a workers' compensation and employee liability insurance policy, Policy # WC 6932505, providing coverage from December 28, 2004 through December 28, 2005 (Id., ¶ 36, Ex. L).  The policy had an estimated annual premium of $70,542, calculated based on the category of employment of each of Weaver's

listed employees, the state of employment, the estimated total remuneration to each category of employment, and the rate of coverage per $100 of remuneration in each class of employment. (Id., ¶¶ 37-39). The policy provided that the final annual premium would be determined by an audit after the policy's end date (Id., ¶ 40, Ex. L).

Weaver made the required estimated payments under the policy, and in September 2005, Goff's corporate affiliate contacted American Home and requested a renewal of the policy for the following year (Doc. 1, ¶¶ 41-22). American Home issued a renewal policy, Policy # WC 8932456 to Weaver for the period December 28, 2005 through December 28, 2006 (Id., ¶¶ 43-44, Ex. M). American Home used the same employment information from the previous year and calculated the annual estimated premium payment for the renewal policy at $70,438.00 (Id., ¶¶ 45-47). The renewal policy contained the same provision concerning calculation of the final annual premium (Id., ¶ 55, Ex. M).

American Home received some payments under the new policy, but canceled the policy effective June 16, 2006 based on Weaver's failure to pay the premiums (Id., ¶¶ 48-49). During the periods that the two policies were in force, American Home paid benefits on several workers' compensation claims.

Both policies obligated Weaver to allow American Home to conduct an audit of Weaver's business and financial records, in order to determine the final annual premium amount. American Home attempted to conduct an audit during the second year of coverage, but Weaver failed to cooperate (Doc. 1, ¶¶ 57-59). During the course of the audit, American Home discovered, for the first time, that Weaver did not conduct any

business in Alabama, and that Beacon was in possession of all of Weaver's payroll information (Id., ¶¶ 60-61).  Beacon also failed to respond to American Home's requests for information (Id., ¶ 62).

Due to Weaver's and Beacon's lack of cooperation, American Home was not able to complete its audit until October 2006 (Id., ¶ 69).  Based on the limited information American Home was able to gather, it discovered that during the December 28, 2004 through December 28, 2005 policy period, Weaver paid for more than 125 employees, and all of these employees were located in Florida (Id., ¶¶ 64-65).  American Home found similar discrepancies between the information on the Accord application and the actual number of Weaver's employees for the policy period from December 28, 2005 through June 16, 2006.  In total, American Home's audit revealed that Weaver owed American Home an additional $404,013.00 in premium payments (Id., ¶¶ 66-67).

American Home alleges that the discrepancies between the nature, scope, and geographical location of Weaver's business operations were deliberate and intentional, and that both Weaver and Beacon specifically intended to induce American Home to provide workers' compensation and employer liability insurance coverage at a rate that was substantially lower than the rate would have been had American Home been furnished with the correct information.  American Home has made demands to Weaver for full payment of the premiums, but Weaver has refused to make any further payments.

**Procedural History**

On June 30, 2009, American Home filed a complaint against Weaver in the United States District Court for the Middle District of Alabama based on the same underlying controversy at issue in this case. See American Home Assurance Company v. Weaver Aggregate Transport, Case No. 2:09-cv-00612-MEF-SRW (the "Alabama action"). Weaver subsequently filed a third-party complaint against Beacon in the Alabama action. On June 28, 2010, the district court dismissed Weaver's third-party complaint against Beacon for lack of personal jurisdiction (Doc. 1, Ex. A, pp 12-25).

On July 6, 2010, American Home and Weaver filed a joint stipulation agreeing to dismissal of the Alabama action without prejudice, in part because Beacon was a necessary party to American Home's claims, and with the mutual understanding that American Home would file a new lawsuit in Florida (Doc. 1, Ex. A, pp. 26-27). Judgment dismissing the Alabama action without prejudice was entered on June 7, 2010 (Id., p. 28).

American Home then filed the present lawsuit against both Weaver and Beacon on July 22, 2010 (Doc. 1). The Complaint alleges seven (7) claims, only three (3) of which are against Beacon: (1) a claim for fraudulent inducement against both Weaver and Beacon (Count Five); (2) a claim for unjust enrichment against Beacon (Count Six); and (3) a claim for breach of third party beneficiary contract against Beacon (Count Seven). American Home alleges that venue is proper in this Court because "a substantial part of the events or omissions giving rise to the claim[s] occurred in this District, Weaver resides in this District and Beacon entered into a contract – which is at the core of this dispute – whereby Beacon agreed to provide services to Weaver [ ] within this District." (Doc. 1, ¶ 11)

American Home further alleges that it was "engaged to provide workers' compensation and employer liability insurance to cover individuals performing work for Weaver pursuant to Weaver and Beacon's agreement, all of whom were apparently actually employed in the state of Florida and within this District." (Id., ¶ 12).

## Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations. Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary

to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## Discussion

**I.      The Fraudulent Inducement Claim**

Beacon argues that the applicable statute of limitations has expired, warranting dismissal of this claim. Under Florida law, legal or equitable actions founded on fraud are subject to a four-year limitations period. Fla. Stat. § 95.11(3)(j); see also Hanna v. Beverly Enterprises - Florida, 738 So. 2d 424, 425 (Fla. 4th DCA 1999). Beacon claims that the limitations period began to run no later than June 16, 2006, the last day American Home provided any coverage to Weaver. Because American Home did not file its Complaint until July 22, 2010, Beacon contends that the claim must be dismissed as untimely.

In response, American Home argues that Florida law does not apply to this claim. Instead, American Home points to New York law (the alleged situs of American Home's injuries and its principal place of business) and Michigan law (the alleged location where Beacon caused the injuries and Beacon's principal place of business) – both of which utilize a six-year statute of limitations for fraud claims[1] – as possible sources of applicable substantive law. On the other hand, Beacon asserts that the Court should look solely to

---

[1] See Pericon v. Ruck, 56 A.D. 3d 635, 636-37 868 N.Y.S. 2d 118, 119-120 (N.Y. App. Div. 2008) (stating that a claim for fraud must be commenced under New York law within six years from the time of the fraud or within two years from the time the fraud was discovered, or could have been discovered, whichever is longer); Blue Cross & Blue Shield of Mich. v. Folkema, 436 N.W. 2d 670, 673 (Mich. Ct. App. 1988) ("In actions for fraud or misrepresentation the applicable limitation period is six years.").

Florida law because Florida is the state where the parties' relationship was centered and where the majority of American Home's business activities (at least with respect to this case) occurred. Beacon also claims that public policy issues would weigh in favor of Florida law applying to this claim.

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." Grupo Televisa, S.A. v. Telemundo Commc'ns Group, 485 F.3d 1233, 1240 (11th Cir. 2007). Therefore, the Court must apply Florida's law to determine which state's substantive law controls this tort claim. Florida has adopted the "most significant relationship test" set forth in the Restatement (Second) of Conflict of Laws. Bishop v. Florida Speciality Paint Co., 389 So. 2d 999, 1001 (Fla. 1980). Under this test, the Court must take into account "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Id.; Restatement (Second) of Conflict of Laws § 145(2).

At this stage of the litigation, the record is insufficient to determine precisely where the injury-causing conduct occurred. It is also impossible to determine precisely where the parties' relationship was centered. Accordingly, the Court cannot properly conduct a conflict-of-laws analysis at this time. See In re Pearlman, No. 6:10-cv-181-Orl-28DAB, 2010 WL 3431825 at * 2 (M.D. Fla. Aug. 27, 2010); Calixto v. BASF Constr. Chems., LLC, No. 07-60077-CIV, 2008 WL 2490454 at * 4 (S.D. Fla. June 19, 2008).

Even if the Court were able to determine which forum's law applies to the fraudulent inducement claim, it is clear that dismissal is not warranted. As stated above, under both New York's and Michigan's six-year statute of limitations, the claim would be timely. And, Florida's four-year limitations period would arguably be extended under Florida's "delayed discovery doctrine," which "provides that an action will not begin running until 'the time the facts giving rise to the cause of action were discovered or should have been discovered.'" In re Burton Wiand Receivership Cases Pending in the Tampa Division of the Middle District of Florida, Case No. 8:05-cv-1856-T-27-MSS, 2008 WL 818504 at * 8 (M.D. Fla. Mar. 26, 2008) (quoting Fla. Stat. § 95.031(2)(a)). American Home has alleged that it did not discover the fraud until October 2006 when it completed its audit (Doc. 1, ¶¶ 63-70), and that it had no reason to be aware of any fraudulent activity until it conducted the audit (Id., ¶ 71). Thus, at the very least, American Home has raised a fact issue concerning when the limitations period for its fraud claim would begin to run under Florida law. See Bearse v. Main Street Investments, 220 F. Supp. 2d 1338, 1345 (M.D. Fla. 2002) (noting that the question of when fraud is discovered is one for the jury and cannot be decided on motion to dismiss under Fed. R. Civ. P. 12(b)(6)); see also La Grasta v. First Union Securities, Inc., 358 F. 3d 840, 845 (11th Cir. 2004) (a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred) (citations omitted).

Beacon's motion to dismiss the fraudulent inducement claim will be denied.[2]

## II.    Unjust Enrichment Claim

For the same reasons, Beacon's motion to dismiss the unjust enrichment claim as untimely also fails. In their motion papers, Beacon and American Home argue that either Florida, Illinois, or New York law applies to this claim. American Home argues for Illinois law as that is the state where Weaver allegedly accepted American Home's insurance contract – and the state with the longest statute of limitations period (five years).[3] Beacon first argues for the four year limitations period under Florida law, as that is the state where the contract between American Home and Weaver was allegedly performed.[4] Beacon also argues that New York law – and its shorter three year statute of limitations[5] – should apply because that is the state where American Home was allegedly located at the time the insurance policies were issued.

---

[2] Beacon also argues in its reply that American Home has failed to properly allege a claim for fraudulent inducement under either New York or Michigan law because American Home did not allege that Beacon "knew any statements are false." (Doc. 34, pp. 6-7). The Court finds this argument unavailing; American Home clearly alleged that Beacon "knew or should have known" that its statements were false (Doc. 1, ¶ 95) (emphasis added).

[3] See Frederickson v. Blumenthal, 648 N.E.2d 1060 (1995) (cause of action for unjust enrichment in Illinois is subject to a five year statute of limitations

[4] See Brown v. Nationscredit Financial Services Corp., 32 So. 3d 661, 662 n. 1 (Fla. 1st DCA 2010) (claims for unjust enrichment are subject to the four year limitations period under Fla. Stat. § 95.11(3)(k)).

[5] See Ingrami v. Rovner, 45 A.D.3d 806, 847 N.Y.S.2d 132 (N.Y. App. Div. 2007) (New York's three year statute of limitations applies to unjust enrichment claims where the plaintiff is only seeking monetary relief).

Florida applies the "lex loci contractus" rule, which looks to the place the contract was executed, for choice of law determinations regarding issues of contract law. Fioretti v. Massachusetts General Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995); David v. American Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1316-17 (S.D. Fla. 2009). This includes claims for unjust enrichment. See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1119 (11th Cir. 1996). However, based on the sparseness of the present record, the Court cannot determine at this time precisely where the contract was executed. See Prime Ins. Syndicate v. B.J. Handley Trucking, 363 F.3d 1089, 1091 (11th Cir. 2004) (stating that lex loci contractus is fact-intensive and requires determination of where the last act necessary to complete the contract is done). The Court also would have to conduct a fact-intensive inquiry into the date this claim accrued, regardless of which limitations period applied. Accordingly, Beacon's motion to dismiss on statute of limitations grounds will be denied.

### III. Third Party Beneficiary Claim

Beacon next argues that American Home has failed to sufficiently plead a claim for breach of third party beneficiary contract. To establish an action for breach of a third party beneficiary contract in Florida, a plaintiff must allege and prove: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." Foundation Health v. Westside EKG

Associates, 944 So. 2d 188, 195 (Fla. 2006) (quoting Networkip, LLC v. Spread Enters., Inc., 922 So.2d 355, 358 (Fla. 3d DCA 2006)). Beacon contends that American Home has failed both to allege that Beacon and Weaver entered into the CSA with the clear intent to directly benefit American Home, and that Beacon breached the contract in any way. Beacon further argues that American Home is nothing more than an incidental beneficiary to the contract, and cannot bring this claim.

In response, American Home points to the CSA's forum selection clause, which clearly states that the contract will be governed and construed in accordance with Nevada law. (Doc. 1, Ex. E, p. 66). See also In re Fountainbleau Las Vegas Contract Litigation, 716 F. Supp. 2d 1237 (S.D. Fla. 2010) (applying New York choice of law provision to claims for breach of intended beneficiary of contract). American Home claims that it can go forward with its claim as Nevada "has long recognized that an individual, although unnamed in a contract or a stranger to both parties thereto, may bring suit where a breach of the contract has caused him injury." Williams v. City of North Las Vegas, 541 P.2d 652, 655 (Nev. 1975). American Home has alleged that Beacon breached the terms of the CSA when it failed to pay the final amount of the premiums for the two workers' compensation insurance policies, and that American Home was injured by this breach, thereby satisfying Nevada law.

American Home interprets Nevada law too broadly. "To be a third party beneficiary, a promissory intent to benefit the third party must be clearly present, and the third party beneficiary's reliance thereon must be foreseeable." Williams v. University Medical Center

13

of Southern Nevada, 688 F. Supp. 2d 1134, 1144 (D. Nev. 2010) (citing Kipshie v. Tracy Inv. Co., 566 P.2d 819, 824-25 (1977)).  However, under either Florida or Nevada law, the Court finds that American Honda has satisfactorily pleaded a claim for third party beneficiary breach of contract.

American Home has alleged in its Complaint that Beacon and Weaver entered into the CSA, and in particular agreed to the express provision whereby Beacon would provide workers' compensation insurance for all leased employees, the two companies "demonstrated their clear or manifest intent to confer a benefit – in the form of insurance premium payments – on American Home." (Doc. 1, ¶¶ 113-14).  The Court finds that this is enough to satisfy the lenient notice pleading standards of Fed. R. Civ. P. 8(a).  See also Williams, 688 F. Supp. 2d at 1144 (noting that an intended beneficiary need not be specifically named in the contract, but may be part of a class of individuals which the parties to the contract intended to benefit).  While American Home may not be named in the CSA, it is at least arguable  that it is part of the class of insurers who provide workers' compensation policies who would benefit from the CSA itself.[6]  See also Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1030-31 (Fla. 4th DCA 1994) (an

---

[6]Beacon further argues that American Home has not alleged that it relied on the CSA as required by Nevada law.  See Lipshie, 566 P.2d at 824-25 ("it ultimately must be shown that the third party's reliance thereon is foreseeable").  The Court does not read Lipshie to add a new pleading requirement, but rather to list the ultimate burden of proof at trial.  Moreover, the Court has been unable to locate a single decision applying Nevada law where a third party beneficiary claim was rejected at the motion to dismiss stage for failure to expressly allege foreseeable reliance.

intended beneficiary can belong to a class of persons which the parties to contract intended to benefit).

Beacon's motion to dismiss the third party beneficiary claim is due to be denied.[7]

## Conclusion

Accordingly, upon due consideration, Defendant Beacon Industrial Staffing, Inc.'s Motion to Dismiss Pursuant to Federal Rule 12(b)(6) (Doc. 11) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 28th day of February, 2011.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[7]The Court also rejects Beacon's argument that American Home has not alleged standing to assert its third party beneficiary claim.  American Home has clearly alleged that it suffered an injury in excess of $400,000, that the conduct of Beacon and Weaver caused that injury, and that a decision in American Home's favor would redress that injury.  Moreover, whether or not American Home paid out more in workers' compensation claims than it received in estimated premium payments from Weaver and Beacon, and whether or not a valid contract existed at any point between American Home and Weaver are fact-based determinations that cannot be resolved at the motion to dismiss stage.