UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AMERICAN HOME ASSURANCE
COMPANY, a New York corporation,

      Plaintiff,

-vs-                                      Case No. 5:10-cv-329-Oc-10TBS

WEAVER AGGREGATE TRANSPORT,
INC., a Florida corporation; and
BEACON INDUSTRIAL STAFFING, INC.,
a Michigan corporation,

      Defendants.

_____/

<u>ORDER</u>

The following matters are pending before the Court:

1.  Plaintiff American Home Assurance Company's Motion to Strike Defendant Beacon's Amended Affirmative Defenses to First Amended Complaint (Doc. 59);

2.  Response to American Home's Motion to Strike Affirmative Defenses (Doc. 63);

3.  Defendant Weaver Aggregate Transport, Inc.'s Motion for Leave to File Cross Claim and Third-Party Complaint (Doc. 60);

4.  Defendant Beacon's Response to Defendant Weaver's Motion for Leave to File Cross Claims and Third Party Claims (Doc. 64); and

5.  Defendant Weaver Aggregate Transport, Inc.'s Reply in Support of Motion for Leave to File Cross Claims and Third Party Claims (Doc. 69).

After due consideration, for the reasons set forth below, American Home Assurance Company's ("American") motion to strike Beacon Industrial Staffing, Inc.'s

("Beacon") affirmative defenses is due to be GRANTED in PART and DENIED in PART and Weaver Aggregate Transport, Inc.'s ("Weaver") motion for leave to file cross claims and third party claims is due to be GRANTED in PART and DENIED in PART.

I.  Background.

In its First Amended Complaint (Doc. 47), American alleges that it is an insurer authorized to provide workers' compensation and employer liability insurance in Florida and Beacon is a professional employment organization providing various human resource services, including leasing employees to its clients.  (Id., ¶¶ 19 and 21). Weaver is a Florida trucking corporation which entered into a Client Service Agreement ("CSA") with Beacon pursuant to which Beacon agreed to provide payroll services to persons working for Weaver, and agreed to "furnish and keep in full force and effect, at all times during the term of this Agreement, Workers' Compensation Insurance covering all [Beacon] employees leased to [Weaver] under the terms of this Agreement."  (Id., ¶¶ 20-22).  Beacon leased numerous employees to Weaver during the life of the CSA. American is not a party to the CSA and is not mentioned in the agreement.

In 2004, American received a request from an insurance broker, The Goff Group, Inc. ("Goff"), to provide a quote for workers' compensation and employee liability insurance for Weaver.  American submitted a quote, which Weaver accepted. American then issued to Weaver a "Binder for Workers' Compensation and Employer Liability Insurance."  The notification attached to the Binder expressly states that: "Binding is subject to the following: any changes in rates and/or experience modification by any entity having jurisdiction over this policy, final premium will be determined at the end of the policy period after payoffs have been audited and applicable rates and

2

experience modification have been applied; and, receipt of a completed signed Acord application and experience modification worksheet within 48 hours." (Id., ¶¶ 24, 26-27). American received Weaver's signed Acord application and a cover letter instructing American to issue the policy for Weaver effective December 28, 2004 (Id.,  ¶ 28).  The Acord application stated that Weaver had fifteen trucking employees and fifteen clerical employees all located in Alabama (Id., ¶ 29).

American received a subsequent letter from Goff instructing it to provide endorsements to add Florida coverage onto the policy, effective January 17, 2005 (Id., ¶ 32).  The letter included a signed Acord application and added five clerical and four trucking employees all located in Florida (Id., ¶ 35).  Based upon its receipt of a signed application and Acord, American issued to Weaver a workers' compensation and employee liability insurance policy providing coverage from December 28, 2004 through December 28, 2005 (Id., ¶ 36).  The policy had an estimated annual premium of $70,542, calculated based on the category of employment of each of Weaver's listed employees, the state of employment, the estimated total remuneration to each category of employment, and the rate of coverage per $100 of remuneration in each class of employment. (Id., ¶¶ 37-39).  The policy provided that the final annual premium would be determined by an audit after the policy's end date (Id., ¶ 40).

Weaver made the required estimated payments under the policy and in September 2005, Goff's corporate affiliate contacted American and requested a renewal of the policy for the following year (Id., ¶ 42).  American issued a renewal policy to Weaver for the period December 28, 2005 through December 28, 2006 (Id., ¶ 43). American used the same employment information from the previous year and

calculated the annual estimated premium payment for the renewal policy at $70,438 (Id., ¶¶ 45-47).  The renewal policy contained the same provision concerning calculation of the final annual premium (Id., ¶ 55).  American received some payments under the new policy but canceled it effective June 16, 2006 based on Weaver's failure to pay the premiums (Id., ¶¶ 48-49).

During the periods that the two policies were in force, American paid benefits on several workers' compensation claims. (Id.¶ 53).  Both policies obligated Weaver to allow American to conduct an audit of Weaver's business and financial records in order to determine the final annual premium amount.  American attempted to conduct an audit during the second year of coverage but Weaver failed to cooperate (Id., ¶¶ 55-59).  During the course of the audit American discovered, for the first time, that Weaver did not conduct any business in Alabama and that Beacon was in possession of all of Weaver's payroll information (Id., ¶¶ 60-61).

Beacon also failed to respond to American's requests for information (Id., ¶ 62).  Due to Weaver's and Beacon's lack of cooperation, American was not able to complete its audit until October 2006 (Id., ¶ 69).  Based on the limited information American was able to gather, it discovered that during the December 28, 2004 through December 28, 2005 policy period, Weaver paid for more than 125 employees all of whom were located in Florida (Id., ¶¶ 64-65).  American found similar discrepancies between the information on the Acord application and the actual number of Weaver's employees for the policy period from December 28, 2005 through June 16, 2006 (Id. ¶ 66).  In total, American's audit revealed that Weaver owed American an additional $404,013 in premium payments (Id., ¶¶ 66-67).  American alleges that the discrepancies between

4

the nature, scope, and geographical location of Weaver's business operations were deliberate and intentional and that both Weaver and Beacon specifically intended to induce American to provide workers' compensation and employer liability insurance coverage at a rate that was substantially lower than the rate would have been had American been furnished with the correct information.  American has made demands on Weaver for full payment of the premiums but Weaver has refused to make any further payments (Id. ¶ 70).

In Count Five of its First Amended Complaint, American alleges that Beacon (and Weaver) fraudulently induced it to provide workers' compensation and employer liability insurance for Weaver.  Count Six is an action against Beacon for unjust enrichment and Count Seven alleges breach by Beacon of a third party beneficiary contract.  Beacon has answered the First Amended Complaint and asserted seven affirmative defenses (Doc. 63).  Now, American is asking the Court to strike Beacon's defenses numbered one, two, four and seven.

II.  Choice of Law.

The parties do not agree upon the state or states whose laws are applicable to their claims and defenses.  Based on the record presented to the Court, the Court cannot properly conduct a conflict-of-law analysis (Docs. 40 and 59).  Although the laws of Florida, New York, Michigan, Nevada and Illinois may be similar, they are not identical and may lead to different results depending, for example, upon which state's statute of limitations applies to a particular claim.

IV.  The Motion to Strike Beacon's Affirmative Defenses.

    A.  Legal Standard.

"An affirmative defense raises matters extraneous to the plaintiff's prima facie case; as such, they are derived from the common law plea of 'confession and avoidance.'"  Flav-O-Rich, Inc. v. Rawson Food Serv., Inc., 846 F.2d 1343, 1349 (11th Cir. 1998) (quoting 5 C. Wright and A. Miller, Federal Practice and Procedure § 1270 at 289 (1969)).  Affirmative defenses are subject to the general pleading requirements of Rule 8(a) and should be "stricken if they fail to recite more than bare-bones conclusory allegations."  Home Mgmt. Solutions, Inc. v. Prescient, Inc., No. 07-20608-CIV, 2007 WL 24112834, at *2 (S.D. Fla. Aug. 21, 2007).  Federal Rule of Civil Procedure 12(f) provides for the striking of insufficient affirmative defenses.  "A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law."  Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, No. 09-61490-Civ., 2010 WL 5393265, at *2 (S.D. Fla. Dec. 21, 2010) (quoting Microsoft Corp. v. Jessee's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla. 2002)).

    B.  First Affirmative Defense.

For its First Affirmative Defense, Beacon says that with the exception of the third-party beneficiary claim it is not a proper party to this suit because it had no relationship or contact with American and was not a party to any contract with American.  Said another way, Beacon has averred that American cannot prove all the requisite elements of its claims for fraud in the inducement and unjust enrichment because it did not have any dealings with Beacon (Doc. 63).  This amounts to a denial  that American can prove

all the elements of these causes of action but it is not an affirmative defense.  Rawson, 846 F.2d at 1349 ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense.")  Therefore, Beacon's First Affirmative Defense will be stricken.

C.  Second Affirmative Defense.

Beacon's Second Affirmative Defense is that American's complaint is barred in whole or in part by laches.  Beacon alleges a significant amount of time elapsed between when American learned the facts and when it filed suit resulting in unspecified prejudice to Beacon.  Regardless of which state's law applies the elements of the defense of laches generally include a lack of diligence by the plaintiff against the defendant, resulting in prejudice to the defendant.  Garcia v. Guerra, 738 So.2d 459, 461 (Fla. 1st Dist. Ct. App. 1999) (citing McCray v. State, 699 So. 2d 1366, 1368 (Fla. 1997); Dunham Lake Property Owners Ass'n v. Baetz, No. 237047, 2003 WL 21419268 (Mich. Ct. App. June 13, 2003); Beiter v. Beiter, 67 A.D.3d 1415, 1416 (N.Y. App. Div. 2009); Mackintosh v. Cal. Fed. Savings & Loan, 935 P.2d 1154, 1161 (Nev. 1997); and Madigan v. Yballe, 920 N.E. 2d 1112, 1122 (Ill. App. Ct. 2009)).  Beacon generally avers delay and prejudice but has failed to plead facts to support these legal conclusions.  Therefore, this defense will be stricken.

D.  Fourth Affirmative Defense.

For its Fourth Affirmative Defense Beacon avers that American's complaint is barred in whole or in part by the lack of privity between it and American.  While not stated in its defense, Beacon now says it only applies to American's claims for fraud in the inducement and unjust enrichment (Doc. 63).

7

American argues that privity is not an element of a claim for fraud in the inducement and therefore, this defense is invalid.  Beacon focuses on Florida law, which may or may not apply, and argues for an extension of the decision in Htp, Ltd. v. Lineas Aereas Costarricenses, 685 So.2d 1238 (Fla. 1996), which holds that in Florida, the economic loss rule is not a defense to a claim of fraud in the inducement.  Beacon says "[l]ogically, it follows that a plaintiff pursuing a claim based on a situation between parties to a contract must be able to show privity between itself and the defendant." Htp. Ltd. does not stand for this proposition and this defense like Beacon's First Affirmative Defense, is concerned with American's ability to prove the elements of its cause of action; it is not a confession and avoidance.

Beacon believes the unjust enrichment claim likely will be governed by New York law which it says requires privity based upon the holding in Redtail Leasing v. Thrasher (In re Motel 6 Litigation), Nos. 93 Civ. 2183 (JFK), 93 Civ. 2866 (JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997).  American, relying upon Paramount Film Distributing Corp. V. State of New York, 285 N.E.2d 695 (N.Y. App. Div. 1972), argues that under New York law, privity is not an element of its claim. The court finds, based upon its own research, that neither party has it exactly right.  In Georgia Malone & Co., Inc. v. Rieder, 86 A.D.3d 406, 408 (N.Y. App. Div. 2011), the court explains "although privity is not required for an unjust enrichment claim (citations omitted) a claim will not be supported unless there is a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part."  And in Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1111 (N.Y. 2011), the New York Court of Appeals stated that "Although privity is not required for an unjust enrichment claim, a claim will

8

not be supported if the connection between the parties is too attenuated."  Thus, to the extent New York law applies, it will require some relationship between American and Beacon which, while short of privity, involves reliance or inducement to support a cause of action for unjust enrichment.  Beacon has not disputed American's contention that privity is not required by the law of any other state which may apply.  However, if New York law applies, then the lack of any relationship between American and Beacon would constitute a defect in American's prima facie case, not an affirmative defense.  For these reasons, Beacon's Fourth Affirmative Defense will be stricken.

      E.  Seventh Affirmative Defense.

Beacon's Seventh Affirmative Defense avers that American lacks standing to bring this claim as it has not alleged any injury-in-fact.  American believes this defense directly conflicts with the Court's Order (Doc. 40), denying Beacon's motion to dismiss.  In its Order, the Court rejected "Beacon's argument that American Home has not alleged standing to assert its third party beneficiary claim."  The Order was issued in response to a Rule 12(b)(6) motion to dismiss meaning the Court was reviewing the allegations of American's complaint in the light most favorable to American and accepted all reasonable inferences that might be drawn from those allegations.  Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir. 1994).  Applying this standard, the Court rejected Beacon's argument but its decision did not foreclose Beacon from raising the issue of standing as an affirmative defense.  In the Order the Court stated that "whether or not American Home paid out more in workers' compensation claims than it received in estimated premium payments from Weaver and Beacon, and whether or not a valid contract existed at any point between American

9

Home and Weaver are fact-based determinations that cannot be resolved at the motion to dismiss stage." Whether this is a viable defense will depend upon the facts which remain to be discovered and proven. Therefore, American's motion to strike Beacon's Seventh Affirmative Defense will be denied.

IV. The Motion for Leave to File a Cross-Claim and Third-Party Complaint.

A. Background.

Weaver has motioned the Court pursuant to Rules 13(g) and 14(a) for leave to file a 25 count cross-claim and third-party complaint against Beacon and non-parties, Salcor Properties, Inc. ("Salcor"), Marina Resources, Inc. ("Marina"), Salvatore Manzo, Southern Brokerage Services, Inc. ("Southern"), Goff, John Goff, Patrick Green and Acordia of Michigan, Inc. ("Acordia") (Doc. 60). Beacon opposes the motion (Doc. 64).

Weaver's new claims are based in part upon events beginning approximately two years before the matters alleged by American. Weaver avers that Salvatore Manzo, solicited its business by assuring Weaver that Beacon would be the employer of all employees Beacon leased to Weaver and Beacon would take care of all employee payroll services including the procurement of workers' compensation coverage (Id., ¶¶ 7-10). Weaver relied upon Mr. Manzo's representations and the CSA memorializes Weaver and Beacon's agreement (Id., ¶¶ 10-11).

Beacon used its insurance agent, Patrick Green of Acordia to procure the workers' compensation coverage. He solicited quotes from Goff and in response to a quote received from Goff, he faxed an Acord application to Goff which was ultimately delivered to American (Id., ¶¶ 13-15). The information submitted to American by Mr. Green, Acordia and Goff was patently false and procured without Weaver's authority

(Id., ¶ 16).  Among other things, it listed Weaver as the employer even though the CSA stated that Beacon would employ all the employees leased to Weaver (Id., ¶ 19).  As alleged by American, based upon the information it received it issued a workers compensation policy and provided coverage for two policy periods (Id., ¶¶ 21-22 and 28).  Weaver was unaware that the workers' compensation policies identified it as the covered entity (Id., ¶¶ 36-36).

Beacon invoiced Weaver for the amount of the workers' compensation premiums allegedly due based upon the false information submitted to American.  Beacon also advised Weaver to make payments for the workers' compensation coverage to a company called S & M Management which was a dba of Salcor.  Weaver's checks were deposited into the bank accounts of Salcor or Marina (Id., ¶¶ 30-33).

Weaver contends that Beacon and the other defendants named in the cross-claim and third-party complaint conspired against it, colluded facts and induced Weaver into signing the Acord forms and other policy related documents (Id., ¶¶ 37-38).  After American filed this suit, Weaver made demands on Beacon for a defense and indemnification which Beacon has ignored.  (Id., ¶ 40).

Now, Weaver proposes to sue Beacon for breach of the CSA, contractual indemnity, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), fraud in the inducement, breach of fiduciary duty, common law indemnity, civil conspiracy and civil racketeering in violation of 18 U.S.C. § 1962 ("RICO").  Weaver also proposes to sue Acordia, Goff and Southern under FDUTPA and for breach of fiduciary duty; Mr. Manzo, Salcor, Marina, Goff, Southern, John Goff and Mr. Green for civil conspiracy; and Mr. Manzo, Goff, Southern and John Goff for RICO violations. (Id.)

11

B.  Jurisdiction.

Weaver invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) and (b) because it says, its proposed claims arise from the same case or controversy that is the subject of American's complaint and the Court has original jurisdiction of its RICO claims pursuant to 28 U.S.C. § 1331.

As a threshold matter, contrary to Beacon's argument, Weaver's motion does not stand or fall as a whole.  The Court may grant the motion as to some, but not all of Weaver's proposed cross-claims and third-party claims.  See, e.g., Steffen v. Viking Corp., 441 F. Supp. 2d 245, 246 n.1 (D. Mass. 2006) (denying in part defendant's motion to file third party complaint as to certain claims and parties); Liz Claiborne, Inc. v. Consumer Prod. Recovery, L.L.C., No. Civ. 3-04-CV-819-H, 2004 WL 1593635, at *2-3 (N.D. Tex. July 16, 2004) (granting motion for leave to file third-party complaint while denying motion for leave to file cross-claim); Brown v. Shredx, Inc., 69 F. Supp. 2d 764, 770 (D. S.C. 1999) (granting in part defendant's motion to file third party complaint as to certain claims); and Davenport v. Neely, 7 F. Supp. 2d 1219, 1234 (M.D. Ala. 1998) (granting in part defendant's motion to file third party complaint as to certain claims and parties).

The Court applies a two part test to determine whether it has supplemental jurisdiction.  First, it must decide whether Weaver's claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). Second, if it determines that the claims are related the Court can still decline to exercise supplemental jurisdiction if:

12

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances there are other compelling reasons for declining jurisdiction.

28 U.C.S. § 1367(c).

Rule 13(g) authorizes a party to bring as a cross-claim, any claim it has against another party on the same side of the litigation "if the claim arises out of the transaction or occurrence that is the subject matter of the original action."  "A claim which satisfies the 'transaction or occurrence' test of Rule 13(g) necessarily must be closely related to the original action" and will therefore, satisfy the requirements for ancillary jurisdiction. Amco Constr. Co. v. Miss. State Bldg. Comm., 602 F.2d 730, 732 (5th Cir. 1979).  "[A] claim is ancillary when it bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction."  Revere Copper and Brass Inc. v. Aetna Cas. and Surety Co., 426 F.2d 709, 714 (5th Cir. 1970).  "[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operatives facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."  Id. at 715.

While Weaver's claims are based in part upon a series of events which predates American's claims they are all part of the same story and rely upon the same core facts so that they are closely related.  Weaver's claims will result in some additional fact

13

finding but those matters are related to and will not predominate over American's claims.  Therefore, the "transaction or occurrence" test of rule 13(g) is satisfied.

The assertion by Weaver of FDUTPA violations does not raise any particularly novel or complex issues.  The Court is capable of deciding whether the FDUPTA claims accrued in Florida, if and how § 512.212 Florida Statutes applies to those claims, and whether they are time barred.

C.  Exercise of the Court's Discretion.

Ultimately, the decision whether to permit the filing of these third-party claims is within the sound discretion of the Court.  In making its decision, the Court may consider the following factors: (1) whether the third-party claims will prejudice American; (2) the risk of unduly complicating the issues or unnecessarily delaying resolution of the case; (3) the timeliness of the motion; (4) the additional expense the parties may incur on account of the claim; and (5) whether the claim has merit.  Zeus Projects Ltd. v. Perez Y Cia. De Puerto Rico, Inc.,187 F.R.D. 23, 33 (D. P.R. 1999).

Weaver's motion to add third-party claims was timely filed and American has not objected to the motion.  The addition of RICO claims may complicate this case because the applicable law can be complex, the amount of damages sought will increase and consequently, the parties may incur additional litigation expense but these factors are not sufficiently weighty to warrant denial of Weaver's motion.  However, the claims against Salcor and Marina are conclusions of law, unsupported by averments of fact and thus lack merit.  Therefore, the Court will grant the motion for leave to file the third-party claims with the exception of the claims against Salcor and Marina.

D.  Cross-Claims.

Rule 14(a) permits a defending party to sue a non-party "who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  In order to add parties under Rule 14 their liability must be "dependent upon the outcome of the main claim."  U.S.A. v. Joe Grasso & Son, Inc., 380 F.2d 749, 752 (5th Cir. 1967).  Weaver's claims against Beacon for breach of the CSA and for indemnification satisfy this requirement.

V.  Conclusion.

For the reasons stated above:

1.  Plaintiff American Home Assurance Company's Motion to Strike Defendant Beacon's Amended Affirmative Defenses to First Amended Complaint (Doc. 59) is GRANTED IN PART and Beacon's first, second and fourth affirmative defenses are STRICKEN.  The motion to strike Beacon's seventh affirmative defense is DENIED.

2.  Defendant Weaver Aggregate Transport, Inc.'s Motion for Leave to File Cross Claim and Third-Party Complaint (Doc. 60) is GRANTED IN PART and DENIED IN PART.  Weaver has seven days from the rendition of this Order within to file it cross-claim and third-party complaint.  Weaver shall omit its claims against Salcor and Marina unless it is prepared to re-plead them to state causes of action.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida on this 16th day of September, 2011.

THOMAS B. SMITH
United States Magistrate Judge

Copies to: Counsel of Record