**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**AMERICAN HOME ASSURANCE**
**COMPANY, a New York corporation**

      **Plaintiff,**

**v.**                                                    **Case No: 5:10-cv-329-Oc-10PRL**

**WEAVER AGGREGATE TRANSPORT,**
**INC. and BEACON INDUSTRIAL**
**STAFFING, INC.**

      **Defendants/Third Party Plaintiff**

**SALVATORE MANZO and SALCOR**
**PROPERTIES, INC.**
      **Third Party Defendants**

_____

**REPORT AND RECOMMENDATION[1]**

    After prevailing on all claims at trial, Plaintiff, American Home, filed the instant motion

for attorney's fees, costs, and prejudgment interest against Defendant Weaver (Doc. 239), to which

Weaver has responded (Doc. 251).   For the following reasons, I submit that American Home's

motion is due to be **GRANTED in substantial part**.

    **I.**    **BACKGROUND**

    On July 22, 2010, American Home filed this action against Weaver and co-defendant

Beacon.   American Home sought recovery against Weaver on theories of breach of contract,

unjust enrichment, open account, account stated, and fraudulent inducement.   Following a four-

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

day trial, the jury found that Weaver and Beacon were jointly and severally liable to American Home for $404,013.   (Docs. 232 & 236).

## II.   DISCUSSION

American Home now seeks $292,945.50 in attorney's fees; $6,663.01 in taxable costs; and $73,893.93 in prejudgment interest.   (Doc. 239).   Weaver argues both that American Home cannot obtain attorney's fees under Florida's offer of judgment statute, Fla. Stat. § 768.79, as none of America Home's claims were based in Florida law, and that the fees are, nevertheless, excessive.[2]   (Doc. 251).

### A.  Fla. Stat. § 768.79 applies to American Home's causes of action.

Florida's offer of judgment statute establishes a party's entitlement to attorney's fees upon certain conditions related to the filing an offer of judgment.   On December 23, 2010, American Home served its offer of judgment on Weaver pursuant to § 768.79, Fla. Stat., proposing that Weaver pay $250,000 for full and final settlement of all of American Home's claims.   (Doc. 239-1).   It did not withdraw its offer, and Weaver failed to accept it within the statutorily-permitted time period.   Therefore, American Home contends that it is entitled to its attorney's fees from December 23, 2010 forward because the amount the jury awarded ($404,013) is greater than the amount of the offer plus 25 percent ($312,500).   *See* Fla. Stat. § 768.79

As an initial matter, federal courts in Florida can, and do, apply Florida's offer of judgment statute to award attorney's fees to a prevailing party.   *See Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008); *see also Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010); *De Varona v. Discount Auto Parts, LLC*, 935 F. Supp. 2d 1335, 1343

---

[2] Weaver's initial argument that the Court should stay American Home's request pending resolution of the post-trial motions is moot, as the Court denied Weaver's Motion to Compel Election of Remedies by American Home (Doc. 247) and Motion for Judgment as a Matter of Law, New Trial, or Remittitur (Doc. 248).   (See Doc. 282).

(S.D. Fla. 2013).   Weaver argues, however, that the statute is inapplicable here, as none of American Home's claims are governed by Florida law.   Indeed, Weaver further argues that American Home should be estopped from relying on Florida law because it argued both before and at trial that New York, Michigan, and Illinois law applied to its breach of contract, unjust enrichment, and fraudulent inducement claims.

As this Court is exercising diversity jurisdiction under 28 U.S.C. § 1332, it must apply substantive Florida state law.   *Doudeau v. Target Corp.*, 572 F. App'x 970, 971 (11th Cir. 2014); *SureTec Ins. Co. v. Nat'l Concrete Structures, Inc.*, 12-60051-CIV, 2013 WL 394873 (S.D. Fla. Jan. 31, 2013).   Florida's offer of judgment statute is substantive law: "[i]t is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes."   *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) amended on reh'g, 311 F. 3d 1077 (11th Cir. 2002); *see also Southeast Floating Docks, Inc. v. Auto–Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012) ("we hold that section 768.79 is substantive for both constitutional and conflict of law purposes").   Thus, it appears that § 768.79, which is the substantive law of Florida, should be applied here, as Plaintiff contends.

While the Florida Supreme Court recently held that § 768.79 does not apply when the parties have contractually agreed (through a choice of law provision) to be bound by the substantive law of another jurisdiction, the Court did not go so far as to say that the Florida statute could not apply where the substantive law of another jurisdiction was applied to a particular claim in the absence of a choice of law provision.   *See Southeast Floating Docks*, 82 So. 3d at 77-78, 81.   Instead, its holding appears limited to contractual disputes involving a specific choice of law provision selecting non-Florida law as the substantive law to be applied in the case.   *Id.* at 77-78. Indeed, the question before the Court was whether, if § 768.79 constitutes substantive law (which,

again, it held it does), would it be "inapplicable in instances where parties to a contract have agreed to be bound by the substantive law of another forum," which it held it would.  *Id.*; *see also Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 372 (Fla. 2013) (noting that in *Southeast Floating Docks* "the cause of action arose from a contract with a choice of law provision that required the application of Michigan law, causing a conflict of law between Michigan and Florida law").[3]   Further, in recognizing that *BDO Seidman, LLP v. British Car Auctions, Inc.*, 802 So. 2d 366, 368 (Fla. 4th DCA 2001) and *Bennett v. Morales*, 845 So. 2d 1002 (Fla. 5th DCA 2003), which both held more broadly that § 768.79 applied in "all civil cases brought in Florida," were erroneous insofar as they conflict with *Southeast Floating Docks*, the Court specifically stated that the problem with those opinions was that their reading of the statute would "supercede the choice of law by the *parties*," which, according to the Court, the statute cannot be read to do. *Southeast Floating Docks*, 82 So. 3d at 81-82 (emphasis added).   Again then, because the Court's focus in disapproving *BDO Seidman* and *Bennett* was preserving the parties' express, contractual choice of law provision, I submit that *Southeast Floating Docks* should not (and cannot) be read to go so far as to say that Florida's substantive offer of judgment statute does not apply in a case (such as this one) where no such contractual choice of law provision exists.[4]

---

[3] Notably, while *Horowitch* was not asked to consider the question presented here, but rather the unrelated issue of whether the statute is applicable where a plaintiff seeks both damages and equitable relief (which it held it was not), it did appear to note that a federal district court could apply Florida's offer of judgment statute where it applied Florida law to several claims and Arizona law to one of the other claims. *Horowitch*, 107 So. 3d 371-72.

[4] But see *Higgins v. West Bend Mut. Ins. Co.*, 85 So. 3d 1156 (Fla. Dist. Ct. App. 2012), which is not binding on this Court, but did deny, without discussion, a motion for attorney's fees under § 768.79 where it applied Minnesota law to a contract, even where there was no choice of law provision.

Here, while there was apparent debate about which state's law might or should govern a particular claim, there was no choice of law provision in the contract that dictated the issue.  (See Doc. 239; American Home's Trial Exhibits 14 & 29).

Now, if the district judge applied Florida law—which he appears to have done—the issue is clear: § 768.79 applies.  If the district judge did not apply Florida law, it is arguably a more difficult question.  But, given the limited nature of *Southeast Floating Docks*, where, as discussed, the contract's choice of law provision clearly rendered Florida's offer of judgment statute inapplicable, and because this case is not, and was not, contractually governed by the substantive law of any other jurisdiction, I would submit that Florida's offer of judgment statute should apply either way.  (And, therefore, I need not make any other effort to determine, after the fact, what law – other than Florida law – governed the claims in this suit.)  In any event, as stated, there is no indication here that the district judge applied anything other than substantive Florida law, so I will proceed accordingly.

## B.  Attorney's Fees

Because American Home prevailed on its claims, and for reasons noted above, it is entitled to fees under § 768.79.

While American Home has a right to attorney's fees incurred in the successful prosecution of its claims, the Court has a corresponding duty to ensure that such an award is reasonable.  In determining a reasonable attorney's fee, the Court applies the federal lodestar approach, which is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party.  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and

hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).   Once the court has determined

the lodestar, it may adjust the amount upward or downward based upon a number of factors,

including the results obtained.   *Norman v. Hous. Auth. of the City of Montgomery*, 836 F. 2d 1292,

1302 (11th Cir. 1988).

    "Ultimately, the computation of a fee award is necessarily an exercise of judgment,

because '[t]here is no precise rule or formula for making these determinations.'"   *Villano v. City

of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

Additionally, the Court is "an expert on the question [of attorney's fees] and may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of witnesses as to value."   *Norman*, 836 F. 2d at 1303

(quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

### 1. Reasonable Hourly Rates

    "A reasonable hourly rate is the prevailing market rate in the relevant legal community for

similar services by lawyers of reasonably comparable skills, experience, and reputation."

*Norman,* 836 F.2d at 1299.   The applicant bears the burden of producing satisfactory evidence

that the requested rate is in line with the prevailing market rates.   *Id.*   The trial court, itself, is an

expert on the question of the reasonableness of fees and may consider its own knowledge and

experience.   *Id*. at 1303.

    Here, American Home contends that its law firm, Carlton Fields Jorden Burt ("Carlton

Fields"), reduced the hourly rates by 15 percent to reflect the Ocala market, rather than the rates

in larger cities of the district, such as Tampa, Jacksonville, and Orlando.   (Doc. 239, p. 12).

Specifically, American Home requests that the Court accept the following rates for each attorney

and paralegal[5] in this matter: $416 per hour for Attorney Meeks, a shareholder; $248-306 per hour for Attorney Weiss, a shareholder; $171-229 per hour for Attorney Strader, an associate; $160-229 per hour for Attorney Cheek, a former associate; and $114 per hour for Paralegal Murray.

In support of its hourly rates, American Home has filed the declaration of its fee expert, Mr. Jones.  (Doc. 239-5).  Mr. Jones, who has been an attorney for 31 years, is a partner in Holland & Knight LLP's Orlando office and practices in the area of complex commercial litigation at the trial and appellate levels.   Mr. Jones opines that the time expended and the corresponding amount of fees charged for American Home's counsel's time were reasonable.  Based on his experience in Central Florida during the relevant period, and his general experience with fees charged by other comparable law firms in the District, Mr. Jones opines that the proposed hourly rates are at or below the customary hourly charges for attorneys and paralegals of similar experience and skill, and are, therefore, reasonable.   (Doc. 239-5, p. 5).   He asserts that the hourly rate is further justified by the nature of the case and Carlton Fields's ultimate success in obtaining a jury verdict in favor of its client.

Weaver has not offered any evidence to refute the reasonableness of the requested hourly rate.   It does not even explicitly argue that the requested rate is unreasonable.   Weaver merely alleges that the total amount of fees incurred is excessive.   Although Weaver does not contest American Home's claimed hourly rates, the Court will briefly discuss counsel's qualifications to determine the reasonableness of the claimed hourly rates in order to comply with its duty to avoid awarding excessive fees and expenses.   *See Access For Disabled, Inc. v. v. FFH, Inc.,* 06-80899-CIV, 2010 WL 1713247 (S.D. Fla. Apr. 7, 2010) report and recommendation adopted sub nom.

---

[5] All lawyers and paralegals were affiliated with Carlton Fields during the relevant time period.

*Access for the Disabled, Inc. v. FFH, Inc*., 06-80899-CIV, 2010 WL 1713242 (S.D. Fla. Apr. 28, 2010).

While American Home offers Mr. Jones's declaration and its timekeepers' biographies to support the requested hourly rates, it does not offer any other "direct evidence of rates charged under similar circumstances." *Chemische Fabrik Budenheim KG v. Bavaria Corp. Int'l,* No. 6:08-cv-1182-Orl-22DAB, 2010 WL 98991, at *4 (M.D. Fla. Jan. 6, 2010). In the absence of additional evidence, the Court may use its own discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees. *Scelta v. Delicatessen Support Serv., Inc*., 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

Here, based upon the Court's own experience and familiarity with rates in the Ocala Division, the undersigned finds that the requested rate for Attorneys Meeks is slightly higher than the prevailing market rates. *See, e.g., Delta RF Tech., Inc. v. RIIMIC, LLC*, No. 5:09-cv-373-Oc-10PRL (M.D. Fla. Nov. 4, 2013) (awarding counsel a rate of $350 per hour); *Raetano v. Burzynski*, No. 8:08-cv-200-T-17-EAJ, 2009 WL 691921 (M.D. Fla. Mar. 13, 2009) (awarding counsel a rate of $350 per hour); *Harty v. Bapuji*, No. 8:10-cv-2720-T-27TBM, 2012 WL 2044970 (M.D. Fla. May 17, 2012) (awarding counsel a rate of $350 per hour). While Attorney Meeks's rate may be higher than rates awarded in this Division in the past, it is represented that he has 32 years of experience at a well-established firm that represents clients throughout Florida. Given the nature of the case and his experience, the Court will award a rate of $400. Otherwise, the undersigned finds that the requested rates should be approved by the Court because they are reasonable and consistent with market rates in the Ocala Division for this litigation.

## 2. Reasonableness of Hours Expended

The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation.   The attorney fee applicant should present records detailing the amount of work performed and "[i]nadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary."   *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985).   Then, the fee opponent "has the burden of pointing out with specificity which hours should be deducted."   *Rynd v. Nationwide Mut. Fire Ins. Co.,* No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at *3 (M.D. Fla. January 25, 2012) (quoting *Centex-Rooney Const. Co., Inc. v. Martin Cnty.*, 725 So.2d 1255, 1259 (Fla. App. Ct. 1999).   Attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary."   *Galdames v. N&D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011).   A court may reduce excessive, redundant, or otherwise unnecessary hours, or may engage in "an across-the-board cut," as long as the court adequately explains its reasons for doing so.   *Id.*

American Home seeks $292,945.50 of compensation for 1,156.8 hours of legal work, comprising: (1) 200.5 hours for Attorney Meeks; (2) 317.8 hours for Attorney Weiss; (3) 194.2 hours for Attorney Strader; (4) 390.1 hours for Attorney Cheek; and (5) 54.2 hours for Paralegal Murray.   (Doc. 239, p. 13).   To substantiate these hours, American Home has filed nearly 100 pages of billing records from Carlton Fields.   (Doc. 239-4).   American Home notes that this was a lengthy case, filed in early 2010.   The case involved a full week of depositions in at least three states, multiple rounds of summary judgment motions, and a protracted discovery period. American Home claims it was "careful throughout this litigation to control expenses," spending only minimal amounts of time on the case until trial preparations commenced.   (Doc. 239, p. 14).

Of note is American Home's minimal activity for a two-year period, during which it only billed time related to a hearing, Mr. Green's deposition, and a response to Weaver's summary judgment motion.

American Home offers two declarations in support of the reasonableness of the number of hours expended.  First, American Home offers the Declaration of Attorney Weiss to provide a general description of the work done by the respective Carlton Fields timekeepers and to explain and attach timekeeping records.  (Doc. 239-4).  Attorney Weiss notes that American Home reduced all rates by 15 percent in order to align them with rates typical of the Ocala legal market. In addition, he states that American Home does not seek reimbursement for $39,250 in attorneys' fees for which it has been or will be billed.[6]

Second, as noted above, American Home submits the Declaration of David Jones, its fee expert, in support of its motion for attorney's fees.  (Doc. 239-5).  Upon his review of Carlton Fields's rates and billing records, Mr. Jones opined that the fees claimed were "fair and reasonable—both on an overall basis and as to the hourly rates…."  (Doc. 239-5, p. 7).

Turning to Weaver's response to the instant motion, the Court notes that Weaver has not met its burden to point out with specificity and reasonable precision which hours should be deducted.   *Scelta*, 203 F. Supp. 2d at 1332 ("Objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise.").   In opposing American Home's request for attorney's fees, Weaver makes broad, unavailing statements, such as American Home's fees are excessive because the fees sought are nearly three-fourths as much as its judgment.  (Doc. 251, p 6).  Weaver offers no case law to demonstrate that this allegation is

---

[6] That amount was for time incurred by certain attorneys, paralegals, and litigation support staff at Carlton Fields who had a relatively limited role in the prosecution of this case.   (Doc. 239-4, p. 6).

legally significant.   Weaver also claims that American Home spent less time on the case than Weaver, but accrued more fees than Weaver.   (Doc. 251, p. 6).   In sum, Weaver fails to point to a single specific hour it would have the Court deduct or provide a declaration of a fee expert to support its claim.

In the Eleventh Circuit, generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight.   *Scelta*, 203 F. Supp. 2d at 1332.   Accordingly, courts in this District generally view a fee opponent's failure to explain exactly which hours it views as unnecessary or duplicative as "fatal."   *Lindsey v. Howell*, 8:10-CV-01910-T-23, 2012 WL 6699593 (M.D. Fla. Nov. 26, 2012) report and recommendation adopted, 8:10-CV-1910-T-23, 2012 WL 6699584 (M.D. Fla. Dec. 26, 2012); *see also Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997).   Indeed, courts have gone so far as to accept *all* hours as to which the fee opponent has not made an objection.   *Scelta*, 203 F. Supp. 2d at 1332; *Access For Disabled, Inc. v. FFH, Inc.,* 2010 WL 1713247, at *4-5 (compensating plaintiffs for all hours billed where defendant did not specifically object to any of counsel's other billing entries).   Consequently, unless clearly non-compensable, all hours as to which Weaver has not made a sufficient objection will be accepted.   *See Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 278 F. Supp. 2d 1301, 1315 (M.D. Fla. 2003).

The Court reviewed in detail the billing records submitted by American Home.   These records were only redacted in a few instances to preserve attorney-client privilege, making the entries easy to read.   In addition, there were relatively few instances of block billing (at least until December 2012), which allowed the Court to examine the precise amount of time spent on each task.   Given the nature of this case, which was litigated over a three year-period, and involved

motions to dismiss, multiple motions for summary judgment, writs of garnishment, jury selection, and a jury trial, the Court finds the number of hours expended on this case reasonable.   American Home prevailed on all of its claims in this heavily litigated case, and the Court concludes it is entitled to all 1,156.8 hours requested.

### 3. Lodestar Summary

In summary, the undersigned recommends that Attorney Meeks's rate be reduced from $416 to $400.   The Court finds the other requested rates to be reasonable and recommends that they stand.   The Court recommends granting the entire number of hours requested: 1,156.8.   With the minor rate reduction, the total fee award equals $289,737.50.

### C.  Costs

As the prevailing party, American Home requests that the Court award its taxable costs of $6,663.01, pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.   American Home provides a Bill of Costs (Doc. 239-2) and supporting documentation (Doc. 239-3), as required by statute and the Federal Rules of Civil Procedure.   Weaver does not object to any of American Home's requested costs.

Fed. R. Civ. P. 54(d) provides that costs other than attorney's fees "should be allowed to the prevailing party" unless a federal statute, the federal rules, or court order provides otherwise. Fed. R. Civ. P. 54(d)(1).   This rule creates a presumption in favor of awarding costs to the prevailing party.   *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)).   In taxing costs under Rule 54, courts may tax only those costs explicitly authorized by statute.[7] *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

---

[7] Under 28 U.S.C. § 1920, the following costs may be taxed: (1) fees of the clerk and marshal; (2) fees of

In the instant motion, American Home requests $350 for the filing fee incurred in connection with filing the complaint, and $6,313.01 in transcript costs. (Doc. 239, p. 15). Specifically, the transcript costs include $6,154.56 for the deposition transcripts of Russell Weaver, Salvatore Manzo, Donna Harwood, Stephen Fulton, and Patrick Green, and $158.45 for the hearing transcript of the pretrial conference.

The Court finds that American Home is entitled to recover $350 for its filing fee. *Access for the Disabled, Inc. v. Missouri Mart, Inc*., 8:05CV392 T23MSS, 2006 WL 5432711 (M.D. Fla. Dec. 7, 2006) (awarding filing fee).

The Court also finds that American Home is entitled to nearly all of the requested transcript costs. The Eleventh Circuit has determined that a party may recover the cost of a deposition transcript if it was "necessarily obtained" for use in the case. *See EEOC v. W & O, Inc*., 213 F.3d 600, 621 (11th Cir. 2000). American Home notes that all of the witnesses mentioned above testified at trial, and, specifically, Mr. Fulton and Mr. Green's videotaped depositions were played at trial. (Doc. 239, p. 16).

The Eleventh Circuit has held that when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed. *Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996). For such costs to be taxable, the prevailing party must explain why it was necessary to obtain both

---

the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under § 1923; and (6) compensation of court appointed experts and interpreter services. 28 U.S.C. § 1920; *Mathews v. Crosby*, 480 F.3d 1265, 1276–77 (11th Cir. 2007).

regular transcripts and videotaped copies. *Id.* at 465 (noting that the prevailing party failed to explain why it was necessary to obtain video copies for use in the case). Courts in the Eleventh Circuit routinely decline to award costs for videotaped depositions because the party requesting the cost failed to explain why such methods were necessary. *See Ferguson v. Bombardier Srvcs. Corp.,* No. 8:03–cv–539–T–31DAB, 2007 WL 601921, *3 (M.D. Fla. Feb.21, 2007); *Perfect Web Techs., Inc. v. Infousa, Inc.*, No. 07–80286–Civ, 2009 WL 2407689, *9 (S.D. Fla. Aug. 4, 2009) (declining to award costs for videotaped depositions because the movant failed to explain why both stenographically transcribed and videotaped copies of the deposition were necessary) (citations omitted); *Utopia Provider Sys., Inc. v. Pro–Med Clinical Sys., L.L.C.*, No. 07–60654–Civ, 2009 WL 1210998, *3 (S.D. Fla. May 1, 2009) (same).

While American Home states that both Mr. Fulton and Mr. Green's depositions were played at trial in lieu of live testimony from those witnesses, it does not explain why it was necessary to obtain a videotaped deposition. American Home does not, for instance, claim that Mr. Fulton and Mr. Green were unavailable for trial and, as a result, a videotaped deposition was necessary to provide evidence to the jury. In fact, American Home claims that all of the witnesses mentioned above, including Mr. Fulton and Mr. Green, testified at trial. But American Home asserts that Weaver did not object to the videotaping of Mr. Fulton and Mr. Green's depositions (Doc. 239, p. 16), and, in fact, it was Weaver that requested the videotaping of Mr. Green's deposition. (Doc. 239, p. 16, n. 10). Because American Home claims that Weaver sought to videotape Mr. Green's deposition, and Weaver does not object to the requested cost, the Court will award American Home the requested cost of Mr. Green's deposition. American Home, however, has failed to adequately explain why it was necessary to obtain stenographically transcribed and

videotaped copies of Mr. Fulton's deposition.   Therefore, the Court will deny American Home's request for the cost of Mr. Fulton's video deposition, $593.75.

American Home also requests $158.45 for the hearing transcript of the November 25, 2013 pretrial conference.   Weaver does not object to American Home's request.   American Home argues that the transcript was important for trial preparation, especially on the issues of jury selection and jury instructions, which were discussed in detail at the conference.   (Doc. 239, p. 17).   Courts in this District have awarded the cost of transcripts of pretrial hearings which were "reasonably necessary."   *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 5:97CV15-0C-10C, 2001 WL 862642 (M.D. Fla. May 4, 2001).   Upon due consideration, the Court agrees with American Home that the pretrial conference transcript was reasonably necessary.   Thus, the Court finds that American Home is entitled to the cost of the hearing transcript of the pretrial conference.

In summary, the Court finds that American Home is due to be awarded $350 for the filing fee, and $5,719.26 in transcript costs—a total of $6,069.26 in costs.

### D.  Prejudgment Interest

American Home contends that it is entitled to an award of $73,893.93 in prejudgment interest pursuant to Fla. Stat. § 55.03.   (Doc. 239, p. 17).   Weaver does not dispute that American Home is entitled to prejudgment interest, nor its calculations.   Weaver merely argues that, should the Court grant its Motion for Remittitur, the Court should reduce American Home's judgment to $145,578.   (Doc. 251, p. 6-7).   As noted above, Weaver filed a Motion for Judgment as a Matter of Law, New Trial, or Remittitur (Doc. 248), which the Court denied in all respects.   (Doc. 282). Therefore, as an initial matter, Weaver's request to adjust the amount of prejudgment interest is due to be denied.

In diversity cases, the Court follows Florida state law governing the award of prejudgment interest.  *Royster Co. v. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir. 1984).   According to the Florida Supreme Court, a plaintiff is entitled to prejudgment interest as a matter of law.  *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (citing *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)).   Florida courts allow an award of prejudgment interest in cases involving contract, tort, unjust enrichment, and fraudulent inducement claims.  *See Bosem v. Musa Holdings, Inc.*, 46 So.3d 42 (Fla. 2010) (contract, fraud, and certain tort cases); *Argonaut*, 474 So. 2d at 215 (awarding prejudgment interest in subrogation action to recover monies paid for negligent property loss); *Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 199 (Fla. Dist. Ct. App. 2004) (unjust enrichment).

In the absence of a special contract for the rate, the applicable rate of interest is generally stated in § 55.03, Fla. Stat.  *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1299 (M.D. Fla. 2013) (citing Fla. Stat. § 687.01).   The prejudgment interest is the rate effective at the time of entitlement.[8]  *Id.* (citing *Genser v. Reef Condo. Ass'n, Inc.*, 100 So. 3d 760, 762 (Fla. 4th DCA 2012)).   The computation of prejudgment interest is "a mathematical computation" and "a purely ministerial duty," which requires no finding of fact and permits no discretion.  *SEB S.A.*, 476 F.3d at 1320.   Prejudgment interest accrues from the date of the loss, or accrual of cause of action, is an element of damages, until final judgment is rendered.  *IberiaBank*, 984 F. Supp. 2d at 1299 (citing *Bel–Bel Intern. Corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1110 (11th Cir. 1998)).

---

[8] The Florida Chief Financial Officer set the judgment interest rate for July 22, 2010-September 30, 2011 at 6 percent, and the rate for October 1, 2011-February 3, 2014 at 4.75 percent.  *See* Jeff Atwater, Florida's Chief Financial Officer, *Historical Judgment Interest Rates*, Florida Department of Financial Services, Division of Accounting and Auditing, http://www.myfloridacfo.com/Division/AA/Vendors/default.htm and http://www.myfloridacfo.com/Division/AA/Vendors/JudgmentInterestRates.htm (last visited Oct. 9, 2014).   Effective June 26, 2003 to June 30, 2011, the interest rate remained the same until paid.   Fla. Stat. § 55.03(3) (2003).   Effective July 1, 2011 and currently, the interest rate adjusts annually on January 1 of each year until paid, and the rate is adjusted quarterly.   Fla. Stat. § 55.03(1, 3) (2011).

Here, American Home uses the date of the filing of the complaint—July 22, 2010 (Doc. 1)—as the initial date on which prejudgment interest should be awarded.[9]   Courts in this District have found it reasonable to use the date of the filing of the complaint as the date on which payment was due.   *See Hawkins v. Condo. Owners Ass'n of Sand Cay, Inc.*, 8:10-CV-650-T-30TBM, 2012 WL 4761357 (M.D. Fla. Oct. 5, 2012) (finding it "reasonable to use the date of the filing of the complaint" to award prejudgment interest where the jury made no finding with respect to the date on which payment was due).   The jury rendered its final judgment on February 3, 2014.   (Doc. 236).

The Court adopts American Home's reasoning that prejudgment interest should begin on July 22, 2010, the date of the filing of the complaint, and should end on the date of the judgment, February 3, 2014.   Accordingly, the Court finds that the amount of prejudgment interest due to be awarded against Weaver is $73,893.93.

## III.   CONCLUSION

The Court recommends that American Home's Motion for Award of Attorney's Fees, Costs, and Prejudgment Interest Against Weaver (Doc. 239) be **GRANTED** as set forth herein, and that American Home receive an award of $289,737.50 in attorney's fees; $6,069.26 in costs; and $73,893.93 in prejudgment interest.

Recommended in Ocala, Florida on November 10, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

---

[9] American Home notes that it could have argued that July 20, 2007—the date on which American Home sent its final invoice to Weaver—should mark the initial date, but chose July 22, 2010 to simplify the matter and because the jury was not asked to make a specific finding with respect to the date on which payment was due to American Home.   (Doc. 239, p. 18).

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy